UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID NG,

    Plaintiffs,                                           Case No: 8:17-cv-509-T-36AEP

    v.

MEGAN J. BRENNAN, POSTMASTER
UNITED STATES POSTAL SERVICE,

    Defendant.

_____/

# O R D E R

    This matter comes before the Court upon Defendant Megan J. Brennan, Postmaster, United States Postal Service's Motion for Summary Judgment (Doc. 62), Plaintiff's response (Doc. 72), the Stipulation of Undisputed Facts (Doc. 73), and the parties' Stipulation (Doc. 85).[1] The Court, having considered the parties' written submissions, declarations, depositions and attachments, and being fully advised in the premises, will now grant the Defendant's Motion for Summary Judgment.

## I.    BACKGROUND AND STATEMENT OF FACTS[2]

    Plaintiff David Ng alleges retaliation and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII") while working for the United States Postal Service

---

[1] The parties also filed notices indicating to the Court that the Stipulation narrows the issues for summary judgment, namely that the Court need not decide the timeliness of Ng's allegations about the suspension of his driving license after the May 2014 incident and the denial of a forklift license. The Postal Service maintains that its arguments in Section III.A.iii and III.B.i are moot, and Ng agrees. *See* Docs. 86, 89.

[2] The Court has determined the facts based on the parties' submissions, including the Stipulation of Undisputed Facts, declarations, depositions and attachments.

(the "Postal Service"). Doc. 26. Ng's claims relate to Equal Employment Opportunity ("EEO") complaints he filed with the Postal Service, some of which he settled. *See id.* at ¶ 2; Doc. 63,[3] Ex. 5; Doc. 62-7;[4] Doc. 66[5] at ¶ 2.

The Fourth Amended Complaint ("FAC") alleges these claims based on Title VII: Count I—disparate treatment based on national origin (Chinese); Count II— disparate treatment based on race (Asian); Count III—disparate treatment in retaliation for engaging in protected activity; and Count IV— retaliatory hostile work environment based on engaging in protected activity. Doc. 26. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees and costs. *Id.*

### a. Factual Background

David Ng was born in Hong Kong and immigrated to the United States several years ago. Doc. 63 at 9:5-8. He identifies as Chinese (national origin) and Asian (race). *Id.* at 74:1-9. He began working for the Postal Service in 2004. *Id.* at 10:9-12; Doc. 62-1. Since 2009, he has worked as a mail handler at the Ybor Processing & Distribution Center ("P&DC"). *Id.* at 16:23-25, 17:1-14.

In 2013, Ng put in a bid to become an equipment operator which requires moving mail throughout the postal facility. *Id.* at 17:15-20, 24:12-25, 25:1-25, 26:1-4; Doc. 63-2; 63-3. The position requires training, a test, and a license to operate the equipment. Doc. 62-2. Ng's colleagues, Jean Max Clairjeune and Dean Coleman, trained Ng on the tow motor. Doc. 63 at 25:22-26:4. In December 2013, the Postal Service temporarily revoked Ng's tow motor license due to a motor collision with stationary equipment. *See* Doc. 62-3.

In May 2014, Ng received a letter of warning due to reports from different managers that Ng's load hit stationary equipment along his route. Doc. 62-4; Doc. 63 at 56:21-62:14; Doc. 66 at ¶ 2.

---

[3] Deposition of David K. Ng, March 29, 2018.
[4] Settlement Agreement Form dated July 16, 2015.
[5] Declaration of Richard Matuszewski dated October 12, 2018.

Ng contacted an EEO counselor and filed an informal complaint alleging discrimination based on race, sex, and age. Doc. 62-5. The parties settled the dispute. Doc. 63 at 61:25, 62: 1-14; Doc. 63-5, Doc. 66 at ¶ 2.

In April 2015, Ng filed another informal EEO complaint alleging race discrimination because the Postal Service denied him a forklift license. Doc. 62-6; Doc. 63 at 62:15-25, 63:1-25, 64:1-19. The parties settled the dispute. Doc. 63 at 64:15-67:1, Doc. 62-7, Doc. 63- 7.

On March 31, 2016, Ng contacted an EEO counselor and filed a formal complaint on April 24, 2016. Doc. 63-8; Doc. 63 at 70:16-25, 71:1-3, 72: 9-13, 73:16-25, 74 :1-25. The EEO complaint alleged discrimination based on race, national origin, sex, age, and religion; it also alleged retaliation for his previous EEO activity. *Id*. The alleged discrimination and retaliation claims derived from the following. Between December 13, 2015, and April 14, 2016, managers prohibited Ng from driving. On April 6, 2016, a manager called Ng over the intercom. On June 1, 2012, and February 10, 2013, managers denied Ng's request for leave based on religious activities. Ng also included conduct from his 2014 EEO complaint and the 2012 letter of warning he received for allegedly calling a fellow employee the "N" word. Doc. 63-8. The agency dismissed those claims under 29 C.F.R. § 1614.107(a)(1)-(2). Doc. 62-11. Ng sued after the agency issued its final decision in favor of the Postal Service and informed him of his right to sue. Doc. 62-12; Doc. 1.

In the parties' Stipulation, Ng withdrew his claims for retaliation and discrimination based on: the alleged lack of training to operate the forklift, the suspension of his tow motor license between December 13, 2015, and April 14, 2016, any warnings, suspensions, or discipline related to his driving a tow motor, and the denial of a forklift license. Doc. 85 at 1. Ng will not testify or

introduce any other evidence of these events to support his claims for discrimination or retaliation. *Id*. [6]

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id*. at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga*., 198 Fed. Appx 852, 858 (11th Cir. 2006).

---

[6] Ng apparently abandoned his claims of discrimination based on age, sex and religion; although he does mention those issues in his discovery responses and deposition.

## III. DISCUSSION

### a. Claim Exhaustion

The Postal Service argues that Ng did not exhaust his administrative claims on several discrete discriminatory acts that occurred before March 31, 2016, including the following. Lewis and Matuszewski denied his leave request based on religious observation on June 1, 2012, and February 10, 2013. Doc. 63-8. Dan Wozniak denied leave on October 25, 2012. Doc. 63-13. He received a letter of warning for allegedly calling his co-worker the "N" word on December 24, 2012, *id.*; Doc. 62-13, and management did not remove the letter from his personnel file until September 2015. Doc. 63-8. The FAC alludes to, but does not explicitly mention, these acts. *See* Doc. 26 at ¶¶ 8, 9, 12. Ng also complained about cleaning duties between 2011 and 2013. Doc. 63 at 124:6-125:18, 126:19-127:4, 128:2-130:5; Doc. 63-14 at 16. Wilkerson's comments began in 2010 and continued through 2015 or 2016. Doc. 64[7] at 8:10-10:13; Doc. 65[8] at 5:12-8:25, 16: 4-25. And the complained-of disparate workload began in 2013. Doc. 63-14 at 13.

The Postal Service argues these acts occurred over 45 days prior to Ng contacting an EEO counselor on March 31, 2016; and they are not actionable here. Ng does not address this argument in his response in opposition to the Motion.

A federal employee must exhaust administrative remedies before suing under Title VII. *Crawford v Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). The employee must initiate contact with an EEO counselor within forty-five days after the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). But a plaintiff need not exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew out of an earlier charge. The district court has ancillary

---

[7] Excerpts of Deposition of Shalonda McGlothin, October 3, 2018.
[8] Excerpts of Deposition of Latosha Gullette, October 11, 2018.

jurisdiction to hear claims that grow out of an administrative charge. *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988). *See also Litman v. Sec'y, of the Navy*, 703 Fed. Appx. 766, 771 (11th Cir. 2017).

This exception generally applies to retaliation claims but not if the plaintiff has no other properly raised judicial claim to which the retaliation claim may attach. *See Baker*, 856 F. 2d at 169. Courts are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under Title VII. The Eleventh Circuit has noted that courts should not strictly interpret the scope of an EEOC complaint. *Litman*, 703 Fed. Appx. at 771 (11th Cir. 2017) (citing *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)).

Here, the Court agrees with the Postal Service that Ng has not exhausted his administrative remedies as to: the June and October 2012 leave requests; the December 2012 letter of warning; the delay in removing the letter from his personnel file; the assignment of cleaning duties; the allegedly disparate workloads; and Wilkerson's comments. Also, Ng released one claim through a previous settlement. Ng did not timely raise these issues either with the EEO counselor or during the administrative process. Thus, he did not properly exhaust these claims.

The Postal Service also argues that Ng has not exhausted his racially hostile work environment claims, to the extent that it is the basis for his disparate treatment claims in Counts I and II. Doc. 62 at 10 (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807-08 (11th Cir. 2010) (explaining that disparate treatment can mean a tangible employment action or a hostile work environment).

It argues that the acts described in the EEO complaint do not correspond to the alleged acts described in the FAC and Ng's responses to discovery. Ng's EEO complaint deals with religious leave and disciplinary action. *See* Doc. 63-8 and Doc. 62-14 (citing events taking place on May

27, 2012; February 2, 2013; and April 13, 2016; which respectively correspond to the denial of religious leave and reinstatement of his driving privileges). But the FAC and Ng's testimony identify racially discriminatory acts including: Wilkerson calling Ng "No Good," "Fucking No Good," and "God Damn it No Good"; Lewis saying "Chinese people are stupid," other comments about his race and national origin overheard by management who took no corrective action; and disparate workload and cleaning duties. Doc. 26 at ¶¶ 8, 11. Ng also testified that Will Hoyte called him "shrimp fried rice" and Clairjeune call him "Kim Il-sung (the North Korean dictator) between 2015 and 2016. Doc. 63 at 136:1-141:5. Latosha Gullette, Ng's co-worker witnessed Wilkerson calling Ng "no good" and heard him imitate Ng's accent several times throughout 2015 and 2016. *See* Doc. 72-2. [9]

Thus, the Postal Service argues these claims were not exhausted and are not properly before the Court. And, it argues, these allegations do not amplify, clarify, or more clearly focus the allegations in the EEO complaint.

The Court agrees that Ng has not administratively exhausted these claims for his disparate treatment and hostile environment claims. *See Green v. Elixir Industries, Inc.*, 152 Fed. Appx. 838, 840 (11th Cir. 2005) (affirming summary judgment for employer in Title VII action where EEOC charge merely alleged termination and complaint alleged hostile work environment). *See also Bridges v. Stand. P. of Tampa GP, Inc.*, 8:06-CV-1937-T-23TGW, 2007 WL 177688, at *2 (M.D. Fla. Jan. 19, 2007) (dismissing sexual harassment and retaliation claims because plaintiff did not list them "by label, by factual allegation, by temporal scope, or otherwise" in her EEO complaint and thus did not administratively exhaust those claims).

---

[9] Affidavit of Latosha Gullette dated June 12, 2018.

Even if the Court considered the acts as part of Ng's claims, they are insufficient to defeat summary judgment, as discussed below.

### b. Counts I & II: Violations of Title VII—National Origin and Race

Ng alleges that he suffered from disparate treatment based on his national origin, which he identifies as Chinese, and his race, which he identifies as Asian, while working with the Postal Service. Doc. 26 at ¶¶ 15, 24. Because the FAC does not distinguish between a tangible employment action or hostile work environment theory, the Court will analyze the claims under both theories.

#### i. Title VII Disparate Treatment Claims

Title VII prohibits discrimination in the workplace based on an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). This discrimination falls into two categories. Disparate treatment and hostile work environment. *Reeves*, 594 F.3d at 808.

In disparate treatment cases, an employer discriminates against a worker "with respect to his compensation, terms, conditions, or privileges of employment, because of" the individual's membership in a protected category. 42 U.S.C. § 2000e–2(a)(1). It can take the form either of a "tangible employment action," like termination or demotion, or of a "hostile work environment" that changes "the terms and conditions of employment, even though the employee is not discharged, demoted, or reassigned." *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1245 (11th Cir. 2004).

If only circumstantial evidence of discrimination, and no direct evidence of discrimination, is offered, the court applies *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Holland v. Gee*, 677 F.3d 1047, 1055 (11th Cir. 2012). Under that framework, a plaintiff first must establish a prima facie case of discrimination that creates a presumption that the employer unlawfully

discriminated against him. *Flowers v. Troup Cty.*, 803 F.3d 1327, 1336 (11th Cir. 2015). "At all times, the plaintiff retains the ultimate burden of persuading the court that [ ]he has been the victim of intentional discrimination." *Id.* (quotation omitted). Once a prima facie case is made, the burden of production shifts to the employer to articulate a "legitimate, non-discriminatory reason" for the challenged employment action. *Id.* If the employer satisfies this burden, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

To show pretext, the plaintiff may rely on the same evidence he relied on in making his prima facie case, although merely quarreling with the reason is insufficient. *Wilson v. B/E Aero, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). The plaintiff must show that the employer's proffered reason for the employment decision was not the true reason and can do so by pointing to its "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1162-63 (11th Cir. 2006) (quotation omitted).

But a reason is still not a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* Further, the truth of the proffered reason is not relevant; the inquiry is whether the plaintiff's supervisors were motivated by their belief that the proffered reason was true. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). The court does not consider whether the employer's employment decision was wise or accurate, but only whether it was motivated by racial animus. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

### ii. Ng's Claims

Here, Ng claims generally that he was treated differently than the other employees, and the black and white employees received more favorable treatment than him. As the only Asian employee in his section, he felt targeted for ridicule, harassment, and punishment.

The Postal Service argues these allegations cannot establish a prima facie case under either a tangible employment action or hostile work environment theory. It argues that it offers a legitimate nondiscriminatory reason for the actions taken, Ng does not identify valid comparators,[10] and the alleged harassing words and behavior were neither severe nor pervasive.

Ng argues there is no dispute he was treated differently, suffered adverse employment actions, and endured a hostile work environment. *See* Doc. 72. But his response in opposition to the Motion provides little detail and does not respond specifically to the Postal Service's detailed argument. He provides no citation to the record or even a summary of the conduct which supports his argument.

### iii. Tangible Employment Action

A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Thus, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. (emphasis in original). "Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id*.

*Davis* concluded that neither "negative job performance memoranda placed in [a] file" nor "changes in ... work assignments" without "any economic injury" are adverse enough to trigger

---

[10] The Eleventh Circuit recently clarified the proper test for comparator evidence as comparators who are "similarly situated in all material respects. *See Lewis v. City of Union City, Georgia*, 15-11362, 2019 WL 1285058, at *2 (11th Cir. Mar. 21, 2019). Ng's proffered evidence falls short of this standard and the previous standard.

Title VII protection against discrimination. *Id*. Thus, Ng must have experienced discipline that rises to the level of a tangible job detriment when claiming discriminatory treatment.

Defendant assumes, without conceding, that Ng's suspension of driving privileges from December 11, 2015, to April 15, 2016, is a tangible employment action. *See* Doc. 62 at 13. But because Ng has abandoned that conduct as a basis for his discrimination claims, the Court need not discuss whether it is a tangible employment action which would support a disparate treatment claim. Ng identifies no other tangible employment action in his response in opposition to the Motion. The three supervisors alleged to have harassed Ng, Wilkerson, Hoyt and Lewis were all supervisors or acting supervisors at the time of the alleged harassment. But only Lewis was involved in the only identified tangible employment action—the 2015 license suspension—which Ng has withdrawn from consideration.

And, upon examining the claims Ng raises in his discovery responses, specifically, the June 1, 2012, October 25, 2012, and February 10, 2013, denial of leave requests, they do not raise tangible employment actions. *See* Doc. 63-8, Doc. 63-14 at 2. These actions were not administratively exhausted. And the December 24, 2012 letter of warning was resolved through a Grievance Resolution. Doc. 63-8 at 4-5; Doc. 62-13. It otherwise does not rise to the level of tangible employment action necessary to support a prima facie case.

### iv. Hostile Work Environment

The Postal Service argues that even had Ng timely exhausted his hostile work environment claim based on race and national origin, he establishes no prima facie case. Ng alleges that the hostile work environment included the following conduct: denial of leave requests, assignment of different workload than other employees, assignment of cleaning duties, comments by Lewis that

"Chinese people are stupid," and other comments related to his national origin made by Wilkerson, Hoyte, and Clairjeune. Doc. 26, ¶ 8; Doc. 63 at 136:1-141:15; 145:3-9; Doc. 63-13 at 2.

To establish a prima facie case of a hostile work environment, a party must show that (1) he is a member of a protected group; (2) who has been subjected to unwelcome harassment; (3) based on a protected characteristic; (4) that was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) that his employer is vicariously or directly liable for the environment. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

The requirement of "severe or pervasive" harassment contains an objective and a subjective component. *Id*. at 1276. To be actionable, this behavior must cause both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive. *Id*. In assessing the objective severity of the harassment, the court considers: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id*.

On their own and taken together, Ng's claims do not establish a hostile work environment. At most, they amount to the type of petty slights that Title VII is not meant to remedy. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). These acts may have been subjectively offensive, but do not rise to the level of pervasiveness or hostility required to establish a prima facie claim for hostile work environment. *See Alansari v. Tropic Star Seafood Inc.*, 388 Fed. Appx. 902, 905 (11th Cir. 2010) (Muslim employee's claim that solicitations to go

to church because "Jesus would save" him, comments about his religion, and the playing of Christian music on the radio were more akin to "mere offensive utterances" than threatening or humiliating comments).

The Postal Service also argues these claims were not timely raised since all but one (comment by Lewis) occurred in 2016 or earlier. *See* Doc. 62 at 11. Thus, it argues that the EEO complaint cannot encompass the hostile work environment claim based on race as described in the FAC. The Court agrees.

Further, the cleaning duties have no apparent link to racial animus, Ng merely testifies that other low performing employees were never asked to perform cleaning duties. Doc. 63 at 124:15-125:18. He also attributes the different workload to vague notions that the "black workers can do whatever they want to," i.e. receiving longer breaks and not getting summoned over the intercom. *Id*. at 120:9-123:15. The few comments related to Ng's national origin and ridiculing his name over several years of working at the Postal Service are not enough to show a workplace "permeated with discriminatory intimidation, ridicule, and insult" that altered conditions of the workplace and created an abusive working environment. *See Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).

Finally, there is no evidence in the record suggesting that the Postal Service's employees' alleged comments unreasonably interfered with Ng's job performance. S*ee e.g., Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803, 808 (11th Cir. 2012) (evidence indicated that alleged harassment did not prevent plaintiff from performing job duties). Thus, Ng has not demonstrated that he suffered an actionable hostile work environment claim.

### 1. *Faragher/Ellerth* **Defense**

The Postal Service argues that even if Ng timely exhausted his hostile work environment claims based on race or national origin and if his allegations stated a prima facie claim of hostile

work environment, Ng's claims would not survive its affirmative defense under *Faragher/Ellerth.*[11] The Postal Service argues that it exercised reasonable care to prevent and correct any harassing behavior and Ng unreasonably failed to take advantage of any preventive or corrective opportunities to avoid the harm. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998)).

In *Faragher* and *Ellerth*, the Supreme Court established that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 524 U.S. at 807; *see also Ellerth*, 524 U.S. at 765. An employer must establish two elements to employ this defense: "(a) that the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1296–97 (11th Cir. 2000) (quoting *Faragher*, 524 U.S. at 807). If the employer demonstrates that the employee did not fulfill his obligation of reasonable care to avoid harm, then that failure is normally enough to satisfy the employer's burden. *Id.* at 1301.

Here, the Postal Service contends that it exercised reasonable care to prevent harassment through its anti-harassment policy which is "comprehensive" and has a "multi-channel complaint procedure." Doc. 62 at 21; Doc. 62-24.[12] The Postal Service distributes the policy to employees through memoranda, EEO posters, and individual training; Ng received that training. Doc. 62-24;

---

[11] *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998).
[12] United States Postal Service Anti-Harassment Policies.

Doc. 62-25.[13] The policy provides that Ng could have reported the harassing behavior to "his immediate supervisor or manager, another supervisor or manager, or to the manager of human resources." Doc. 62-24 at 8, 10. The employee can also ask a coworker or union representative to speak on his or her behalf. *Id*. at 10.

The policy meets the minimum requirements for the *Faragher/Ellerth* affirmative defense. It does not require the employee to complain to the offending supervisor or through the supervisor's chain of command and provides multiple avenues of lodging a complaint to accessible, designated representatives. *See Madray*, 208 F.3d at 1299.

Finding no defect in the Postal Service's harassment policy and no evidence it administered the policy in bad faith, the Court concludes that the Postal Service exercised reasonable care to prevent harassment under *Faragher/Ellerth*. *See Olson v. Lowe's Home Ctrs. Inc*., 130 Fed. Appx. 380, 389 (11th Cir. 2005) (finding satisfaction of the first prong as the policies enabled employees to bypass harassing supervisors and provided several avenues for employees to report harassment); *Dinkins v. Charoen Pokphand USA, Inc*., 133 F.Supp. 2d 1237, 1251 (M.D. Ala. 2001) (holding that a policy fulfills its anti-harassment obligation if the employer disseminates a policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress[;] and the policy must not be administered "in bad faith" or be otherwise "defective or dysfunctional.").

Ng was aware of these policies because he invoked his EEO rights several times between 2006 and 2016 and filed numerous grievances and reports to management. *See, e.g.,* Docs. 63-1, 63-7, 63-5, 63-8, 63-9, 62-26. Yet, he did not include Wilkerson's comments in any of his EEO complaints. Docs. 9, 26, 62- 5, 62-8. Ng vaguely recalls that he "complained to [] other people" in

---

[13] Ng's training records.

2010 and 2013 about these comments (including "Joe" from "mail sorting" and Kim) and orally reported Wilkerson's comments to Curtis Lewis in 2016. Doc. 63 at 148:22-151:9. But it was not until 2017, after he filed a lawsuit, that Ng completed a "threat/assault incident report" complaint about Wilkerson, and the behavior stopped. Doc. 62-26 at 29-1, Doc. 63 at 149:6-11. And Ng's complaints about these specific comments by Wilkerson, Clairjeune, and Lewis appear for the first time in this lawsuit. *See* Doc. 1.

Informal complaints to those not tasked by the employer to receive or process harassment complaints is not enough to put the employer on notice. *See Madray,* 208 F.3d at 1300. It is unclear who is "Tom" and whether he was an appropriate person to report the alleged harassment. And Ng vaguely recalls mentioning the incidents to Tom and Kim, but does not state what he told them, i.e. whether he specifically characterized the behavior as harassment, and what he asked them to do on his behalf, if anything. Further, Ng's testimony that management would consider his complaints meritless, Doc. 63 at 148:5-10, 14-21; 149:12-15, does not relieve him from his duty of reporting it. *See Walton v. Johnson and Johnson Servs., Inc.,* 347 F.3d 1272, 1290–91 (11th Cir. 2003) ("Subjective fears of reprisal may exist in every case, but ... those fears, standing alone, do not excuse an employee's failure to report a supervisor's harassment."). Viewing the evidence in the light most favorable to Ng, it is clear that Ng unreasonably failed to take advantage of the corrective opportunities offered by the Postal Service as to these comments. *See Garrett v. Tyco Fire Products, LP*, 301 F. Supp. 3d 1099, 1127 (N.D. Ala. 2018) (employee's reporting of nine out of twenty-four harassing acts was a failure to adequately apprise appropriate personnel of the full extent of the harassment which was fatal to his claim).

Ultimately, Ng fails to point to any evidence that creates an issue of fact on whether a reasonable person in his position would find the conduct at issue sufficiently severe or pervasive

to constitute a working environment so hostile as to alter the terms and conditions of his employment and create a discriminatorily hostile work environment. *See Mendoza*, 195 F.3d at 1246. The Postal Service is entitled to summary judgment in its favor on Counts I and II.

### c. Counts III & IV: Title VII Retaliation

The Postal Service argues that Ng has not established a prima facie case of retaliation because the only remaining tangible employment action Ng has identified, the denial of his leave request for June 15, 2017, has no causal connection to his protected activity. *See* Doc. 62 at 24 (citing Doc. 63-14 at 2). Even if Ng could establish a prima facie case of retaliation, the Postal Service argues that it has produced a legitimate nonretaliatory reason for the employment action. Further, the Postal Service argues that Ng has neither met the high bar of producing evidence that retaliation is the "but for" reason for the action nor established that the reason is pretext.

Ng does not specifically address retaliation in his response in opposition to the Motion. The Court will rely on his arguments about disparate treatment generally. *See* Doc. 72 at 4-5.

### i. Title VII Retaliation Claims

"Retaliation against an employee who engages in statutorily protected activity is barred under...Title VII...." *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012). If a plaintiff has direct evidence, then he can establish a prima facie case of retaliation. Direct evidence is "evidence from which a trier of fact could conclude, based on a preponderance of the evidence, that an adverse employment action was taken against the plaintiff on the basis of a protected personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1303-04 (11th Cir. 1999) (finding direct evidence of age discrimination where two people involved in the decision to terminate plaintiff made discriminatory comments about plaintiff's age less than three months prior to plaintiff's termination).

The Eleventh Circuit has indicated that "only the most blatant remarks, whose intent could be nothing other than to discriminate [or retaliate]...constitute direct evidence of discrimination [or retaliation]." *Murdoch v. Medjet Assistance, LLC*, 294 F. Supp. 3d 1242, 1265 n. 27 (N.D. Ala. 2018) (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)).

If a plaintiff relies on circumstantial evidence, he must follow the Supreme Court's basic allocation of burdens and order of proof in the *McDonnell Douglas* model. Specifically, he first must prove by a preponderance of evidence a prima facie case of retaliation by showing that: (1) he "engaged in statutorily protected activity"; (2) he "suffered a materially adverse action"; and (3) "there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010).

Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory reason for its employment decision. If the defendant carries its burden of production, "[t]o survive summary judgment, the employee must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the legitimate reasons given by the employer were not its true reasons, but were a pretext for discrimination [or retaliation]." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143, (2000)). Ultimately, the plaintiff must show that retaliation was the "but for" reason for the employment action. *U. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

To state a claim for "retaliatory hostile work environment," a plaintiff must allege a basic retaliation claim (as detailed above) in addition to demonstrating that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012).

When courts evaluate the objective severity of the harassment, they look at the totality of the circumstances and consider the following, among other things: "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1312.

### ii. Ng's Claims

Ng appears to argue that he has direct evidence of retaliation. He relies on several comments made by managers and colleagues in the P&DC as direct evidence of retaliatory animus. For example, he points to Wilkerson making fun of his name: "No Good," Lewis stating that "Chinese people are stupid," Hoyt calling him "shrimp fried rice," and Clairjeune calling him "Kim Il Sung." Doc. 63 at 136:1-141:15. None of these comments serve as direct evidence of retaliatory animus for engaging in protected activity, they require an inference that the individuals called him these names in response to his having opposed discriminatory treatment and participated in the EEO process. Thus, Ng lacks direct evidence.

Ng also has not established a prima facie case of retaliation through circumstantial evidence. There is no dispute that Ng participated in EEO activity; the first element is satisfied. But the Postal Service argues that the identified employment actions are not materially adverse and Ng has neither established a causal connection between the actions and his protected activity nor that retaliation was the "but for" cause. The Court will assume, without deciding, that the July 2017 denial of Ng's leave request was materially adverse.

As its legitimate nonretaliatory reason for the denial, the Postal Service maintains that the quota for absent employees was full; three other employees had obtained that day off. Doc. 63-14 at 2; Doc. 63-47. The Postal Service also points out that it approved several of Ng's other leave requests. Doc. 62-28. Ng points to no evidence that the denial of the request for leave was retaliatory or that the reason for the denial was pretextual. Ng has not established that the Postal Service's reason for denying his request for leave was pretextual.

Assuming Ng could establish the other bases for a retaliation claim, the Court will evaluate whether the behavior was sufficiently severe and pervasive as to create a hostile work environment. The Postal Service argues that Ng has not demonstrated that these actions, different job assignments, write-ups, and denial of overtime, are retaliatory or sufficiently severe and pervasive. *See* Doc. 26, ¶ 9; *see* Doc. 63-14 at 20-21. Ng also attributes Wilkerson's "no good" statement to retaliation, Doc. 26 at ¶ 11, and the frequency of the denials of overtime. Doc. 63-14 at 17. Ng stated these actions were retaliatory because they relate to racial differences between him and his managers and coworkers. Doc. 63-14 at 17-22. Under the totality of the circumstances, the Postal Service argues that the allegedly harassing behavior was not objectively severe and pervasive.

Ng's arguments and testimony cannot defeat summary judgment as to his retaliatory hostile work environment claims. He demonstrates no causal relationship between the allegedly retaliatory acts and his protected activity. And he does not show that the acts were sufficiently severe and pervasive as to alter the terms and conditions of his employment and unreasonably interfere with his job performance.

Further, because these comments span several years and came from four individuals, they are insufficient to be frequent and pervasive. *See e.g., Guthrie*, 460 Fed. Appx. at 807 (a dozen comments spread out over eleven months are not sufficient to support a hostile work environment

claim); *Hopkins v. Baltimore Gas & Electric Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (intermittent events over a seven year period not sufficient to establish a workplace harassment claim); *cf. Reeves,* 594 F.3d at 808-814 (claim for hostile work environment can proceed where offensive and derogatory comments occurred daily).

The comments were also nonthreatening and akin to racial epithets and stereotypes. Overall it is not enough to demonstrate a hostile work environment that is repugnant, physically threatening or humiliating. *See Harris*, 510 U.S. at 21 (reiterating that the "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII."); *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008) (finding black employee's allegations that a white employee called her "girl" and two male black employees "boys," and that another coworker referred to a former black employee as a "nigger bitch" did not amount to severe or pervasive harassment).

The Eleventh Circuit has found racial slurs and offensive symbols and comments to be insufficient in other cases. *See Alexander v. Opelika City Schools*, 352 Fed. Appx 390, 393 (11th Cir. 2009) (plaintiff's testimony that he was called "boy" constantly, but could only recall eight specific instances over the course of two years, insufficient to show hostile work environment); *Barrow v. Georgia Pacific Corp.*, 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (racist slurs and symbols which were discriminatory and offensive were insufficient evidence that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' "); *Quarles v. Con-Way Freight, Inc.*, 2008 WL 1994916 *7 (M.D. Fla. May 8, 2008) (holding that supervisor's comments regarding affirmative action, "Black Jew," and "nigger" fell "well short of the required level of severity and frequency to support a hostile work environment claim.").

Thus, the Postal Service is entitled to summary judgment in its favor on Ng's retaliation and retaliatory hostile work environment claims under Counts II and IV.

## IV. CONCLUSION

Plaintiff describes a work environment where he felt ridiculed and ostracized. He opposed behavior he perceived as discrimination and retaliation. But the evidence does not establish that the Postal Service engaged in impermissible discrimination or retaliation, nor was the working environment so permeated with severe harassment that it created a hostile work environment. Ng must provide more than isolated incidents and comments from colleagues and supervisors; he must establish materially adverse employment actions, but for causation, and severe and pervasive behavior to survive summary judgment. He did not do so here. There being no genuine issues of material fact, Defendant is entitled to judgment in its favor, as a matter of law.

**Accordingly, it is ORDERED and ADJUDGED**:

1.    Defendant's Renewed Motion for Summary Judgment (Doc. 62) is **GRANTED.**

2.    All other motions are **DENIED AS MOOT.**

3.    The Clerk is directed to enter judgment for Defendant Postmaster General, United States Postal Service and against Plaintiff David K. Ng and close this case.

**DONE AND ORDERED** in Tampa, Florida on June 11, 2019.

Charlene Edwards Honeywell
United States District Judge